# Illinois Official Reports

## Appellate Court

---

### *People v. McFadden*, 2014 IL App (1st) 102939

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ONAFFIA McFADDEN, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-2939 |
| Opinion filed<br>Rehearing denied<br>Modified upon<br>denial of rehearing | November 30, 2012<br>January 30, 2014<br>February 4, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The 15-year statutory enhancement of defendant's armed robbery sentences was vacated as unconstitutional under *Hauschild* and the enhancement was not revived by Public Act 95-688, one conviction for unlawful use of a weapon by a felon was vacated pursuant to the one-act, one-crime, rule and the cause was remanded for resentencing as though the enhancement never existed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 08-CR-4951, 08-CR-4952; the Hon. Sharon Sullivan, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; mittimus corrected. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Pamela Rubeo, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Carol L. Gaines, Annette Collins, and Kathryn A. Schierl, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Neville and Mason concurred in the judgment and opinion.

## OPINION

¶ 1      Following a bench trial in the circuit court of Cook County, the trial judge found defendant Onaffia McFadden guilty of three armed robberies while armed with a firearm (720 ILCS 5/18-2(a)(2) (West 2008)) and two counts of unlawful possession or use of a weapon (UUW) by a felon (720 ILCS 5/24-1.1(a) (West 2008)). The trial judge sentenced defendant to 29 years in prison on each of the armed robbery convictions, including a 15-year enhancement for carrying a firearm pursuant to section 18-2(b) of the Criminal Code of 1961 (Code) (720 ILCS 5/18-2(b) (West 2008)). The trial judge also sentenced defendant to 10 years in prison on each of the convictions for UUW by a felon. All of the sentences were ordered to be served concurrently.

¶ 2      On appeal, defendant contends that: (1) the 15-year statutory enhancement of his armed robbery sentences is unconstitutional; (2) his sentence is otherwise excessive; (3) one of his convictions for UUW by a felon violates the one-act, one-crime rule; and (4) the mittimus must be corrected to remove an erroneous conviction for aggravated unlawful use of a weapon (AUUW). For the foregoing reasons, we affirm defendant's convictions and sentences for armed robbery, vacate defendant's convictions for UUW by a felon, and correct the mittimus.

¶ 3                              BACKGROUND

¶ 4      An explanation of the procedural posture of this case is important where the original opinion in this case was filed more than a year ago. In *People v. McFadden*, 2012 IL App (1st) 102939, which we are withdrawing contemporaneous with the filing of this opinion, Justice Steele authored an opinion vacating the 15-year enhanced portion of defendant's armed robbery sentences, vacating one of his convictions for UUW by a felon, correcting the mittimus, and remanding the case for resentencing. Justice Steele retired shortly after filing

that opinion. The State then filed a timely petition for rehearing on January 11, 2013. Defendant filed an answer to the State's petition for rehearing on December 12, 2013, and the State filed a reply on December 27, 2013. In separate orders filed contemporaneously, we deny the State's petition for rehearing and withdraw the previous opinion filed in this case.

¶ 5 The record on appeal discloses the following facts. On March 5, 2008, defendant was indicted in case number 08 CR 4591 for the armed robbery of Ronald Pitts and Jasmine Stephens, as well as for AUUW and UUW. Defendant was also charged in case number 08 CR 4592 for the armed robbery of Henry Muldrow, as well as AUUW and UUW. In case number 08 CR 3647, defendant was indicted for the armed robbery of Iris Talley, in addition to AUUW and UUW.

¶ 6 Prior to trial, and over defense counsel's objection, the State successfully moved to join the Muldrow and Talley cases, arguing that they involved "essentially one crime spree." The State later moved for joinder of all three cases, again over the defense's objection, arguing that they were part of the same comprehensive transaction. The trial court granted the motion, on the grounds that the offenses were similar and occurred relatively close in time and location, the same weapon was alleged to have been involved in all three cases, and the proceeds from the crimes were allegedly found at the same time in a vehicle with defendant.

¶ 7 The case proceeded to a bench trial. Pitts testified that shortly after midnight on January 28, 2008, he and Stephens were standing at a bus stop at 7900 South Princeton Avenue when two African-American males approached them. Pitts stated that one of the men, whom Pitts identified in court as defendant, held a revolver to his neck and took his telephone, wallet, and money. Pitts further testified that defendant also took Stephens's telephone. After defendant left, Pitts flagged down a police car, and he and Stephens reported the offense to the police.

¶ 8 Moreover, Pitts testified that he was contacted by the police the next day and identified defendant in a lineup, as well as his stolen telephone, wallet and money. At trial, Pitts identified defendant in a photograph of the lineup. He also identified the gun used during the robbery in a photograph shown as an exhibit at trial.

¶ 9 Stephens did not testify at trial.

¶ 10 Muldrow testified that in the late evening of January 28, 2008, he was looking for his dog in an alley near his home at 6840 South Wabash Avenue when two African-American males approached him. Muldrow stated that one of the men, whom he later identified as Defendant, had his hand in his right pocket. Muldrow further testified that defendant pulled a gun out of that pocket and put the barrel to Muldrow's chest. According to Muldrow, defendant asked for money and Muldrow responded that he did not think he had any. Muldrow stated that defendant searched him and, upon finding $4 or $5 dollars, said "I could have shot you for that." In addition to the money found on Muldrow, defendant also took Muldrow's telephone. After the men left, Muldrow went inside and telephoned the police.

¶ 11 Approximately 15 minutes later, the police telephoned Muldrow and brought him to the police station, where he identified defendant in a lineup. Muldrow also identified the telephone and currency taken from him.

¶ 12    Chicago police officer Anthony Bruno testified that shortly after midnight on January 29, 2008, he and his partner were in an unmarked police car near 6800 South Wabash Avenue when they were flagged down by Talley. Officer Bruno's partner, Andrew Janik, testified that Talley said that he was robbed. After speaking to Talley, the officers curbed a beige Chevy Cobalt near 319 East Marquette Road. The police commanded the driver and passenger to show their hands. Officer Bruno testified that the driver, Herman Climons, showed his hands, while the passenger, defendant, leaned forward and made movements toward the glove box. Officer Bruno further testified that he saw the glove box open, revealing a revolver inside. Officer Bruno handcuffed defendant, while his partner removed Climons from the automobile.

¶ 13    Moreover, Officer Bruno testified that police brought Talley to the scene, whereupon Talley identified Defendant, but not Climons. Officer Bruno found several telephones, a wallet, a videogame and cash in Defendant's pockets. Officer Bruno also retrieved the revolver from the glove box, discovering it was loaded with six live rounds. Talley did not testify at trial.

¶ 14    Chicago police detective Henry Barsch testified that Muldrow and Pitts identified defendant in lineups (Muldrow failed to identify Climons). Detective Barsch also testified that he and Detective Matthew Weber spoke to defendant, who indicated that he wanted to speak to an assistant State's Attorney. In stipulated testimony from Detective Weber, he stated that the police asked defendant whether he wanted to give a written statement.

¶ 15    Assistant State's Attorney (ASA) Maureen Renno testified that, in the presence of the detectives, defendant gave a written statement inculpating himself in the armed robbery of Pitts and Stephens.

¶ 16    The parties stipulated that defendant had a prior AUUW conviction.

¶ 17    Following the close of the State's case, the trial judge granted the defense motion for a directed verdict in the Talley case. Following the close of evidence, the State referred to defendant's "crime spree" and urged the trial judge to find defendant guilty of the "gun charges in this case" in closing argument.

¶ 18    The trial judge, after reviewing the evidence, found defendant guilty of the armed robberies of Pitts, Stephens and Muldrow. In the Pitts and Stephens case, the trial judge found defendant guilty of one count of UUW by a felon. In the Muldrow case, the trial judge found defendant guilty of one count of UUW by a felon.

¶ 19    Defendant filed a motion for new trial, which the trial court denied on August 20, 2010, before proceeding to a sentencing hearing. After hearing evidence in aggravation and mitigation, the trial judge sentenced defendant to 29 years in prison on each of the three armed robbery convictions, including a 15-year statutory enhancement for carrying a firearm pursuant to section 18-2(b) of the Code (720 ILCS 5/18-2(b) (West 2008)). The trial judge also sentenced defendant to 10 years in prison on both of the convictions for UUW by a felon. The trial judge ordered the sentences to run concurrently.

¶ 20    On September 3, 2010, defendant filed a motion to reconsider his sentence. The trial judge denied the motion on the same day. On September 17, 2010, Defendant filed a timely notice of

appeal.

## DISCUSSION

### I. The One-Act, One-Crime Rule

As a threshold matter, we consider defendant's argument that his two convictions for UUW by a felon must be vacated under the one-act, one-crime rule set forth in *People v. King*, 66 Ill. 2d 551, 566 (1977). Defendant concedes that he forfeited review of the issue by failing to object at trial and failing to include the issue in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 187 (1988). However, he requests that we review the matter for plain error. The plain-error rule is a limited exception to the forfeiture rule and may be invoked only if the evidence is closely balanced or if the alleged error is so fundamental that it may have deprived the defendant of a fair trial or sentencing hearing. *People v. Herrett*, 137 Ill. 2d 195, 209-10 (1990). "[F]orfeited one-act, one-crime arguments are properly reviewed under the second prong of the plain-error rule because they implicate the integrity of the judicial process." *People v. Nunez*, 236 Ill. 2d 488, 493 (2010) (citing *People v. Artis*, 232 Ill. 2d 156, 167-68 (2009)).

The one-act, one-crime doctrine prohibits multiple convictions when: (1) the convictions are carved from precisely the same physical act; or (2) one of the offenses is a lesser-included offense of the other. *People v. Lindsey*, 324 Ill. App. 3d 193, 200 (2001). Thus, the first step is to determine whether the defendant's conduct consisted of a single physical act or separate acts. *People v. Harvey*, 211 Ill. 2d 368, 389 (2004). "Multiple convictions are improper if they are based on precisely the same physical act." *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). Our supreme court has defined an "act" as " 'any overt or outward manifestation which will support a different offense.' " *Rodriguez*, 169 Ill. 2d at 188 (quoting *King*, 66 Ill. 2d at 566). We consider this issue *de novo*. *People v. Peacock*, 359 Ill. App. 3d 326, 331 (2005).

Both defendant and the State rely on *People v. Crespo*, 203 Ill. 2d 335, 345 (2001). In *Crespo*, the defendant was convicted of the first degree murder of one victim and one count each of armed violence and aggravated battery in the stabbing of a second victim. *Id*. at 337. On appeal to our supreme court, the defendant argued that his conviction for aggravated battery should be vacated because it stemmed from the same physical act as the armed violence charge. *Id*. Although the defendant had stabbed the second victim three times, and each stabbing was a separate and distinct act, the State did not charge defendant for the three separate stabbings in the indictment. *Id*. at 340-42. Instead, the different counts in the indictment charged the defendant under different theories of criminal culpability for the same course of conduct, namely, the three stabbings. *Id*. at 342. Moreover, the State's theory at trial, as shown by its argument to the jury, showed that the State intended to portray the defendant's conduct as a single attack. *Id*. at 343-44. The *Crespo* court emphasized that the State could have charged the crime as multiple acts, and could have argued the case to the jury that way, but chose not to do so; the court would not allow the State to change its theory of the case on appeal. *Id*. at 344. Accordingly, our supreme court held that where a defendant commits multiple criminal acts, but the indictment only charges the defendant for a single course of

conduct, the trial court cannot then convict the defendant for separate criminal acts. This is true even if multiple theories of culpability are presented. *Id*. at 345.

¶ 26    Here, defendant argues that the State treated the events at issue as one "crime spree" and as parts of the same comprehensive transaction. The State acknowledges that the cases against defendant were consolidated on the grounds that the offenses were similar and occurred relatively close in time and location, the same weapon was alleged to have been involved in all three cases, and the proceeds from the crimes were allegedly found at the same time in a vehicle with defendant. Nevertheless, the State notes that the UUW by a felon charges were brought against defendant in separate indictments and the robberies were addressed and argued as distinct events at trial. The State also notes that, "[i]n deciding whether defendant's conduct in a particular instance constituted separate acts or merely formed distinct parts of a single physical act, reviewing courts have considered the identity of the victim and location, the similarity of the acts and lack of a substantial time interval or intervening act between them, and prosecutorial intent as reflected in the wording of the charging instrument." *People v. Cobern*, 236 Ill. App. 3d 300, 303 (1992) (citing *People v. Baity*, 125 Ill. App. 3d 50, 52-53 (1984)).

¶ 27    Defendant was twice convicted of violating section 24-1.1(a) of the Code (720 ILCS 5/24-1.1(a) (West 2008)), which makes it "unlawful for a person to knowingly possess on or about his person *** any firearm *** if the person has been convicted of a felony under the laws of this State or any other jurisdiction." Although this section of the Code is titled "Unlawful Use or Possession of Weapons by Felons or Persons in the Custody of the Department of Corrections Facilities," the title does not supersede the express language of the statute. See *Alvarez v. Pappas*, 229 Ill. 2d 217, 230-31 (2008). The unambiguous language of section 24-1.1(a) of the Code plainly makes *possession*, not use, of a firearm the *actus reus* of the offense. Significantly, the possession criminalized is not tied to the use of the weapon in the commission of any offense.

¶ 28    Possessory offenses have always posed special problems in determining violations of the one-act, one-crime rule. *People v. McCarter*, 339 Ill. App. 3d 876, 881 (2003). The rule of lenity provides that ambiguities in criminal statutes should be resolved in a defendant's favor, but not "stretched so far as to defeat the legislature's intent." *People v. Fields*, 383 Ill. App. 3d 920, 922 (2008). In construing a statute, we presume that the legislature did not intend absurd, inconvenient, or unjust results. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003).

¶ 29    In this case, unlike the easily separable acts at issue in *Crespo*, allowing seemingly continuous possession as the basis of more than one conviction theoretically would permit a potentially infinite number of convictions, as the defendant possessed the firearm from hour to hour, minute to minute, nanosecond to nanosecond. We presume the legislature did not intend that result. While the evidence here shows discrete armed robberies, there is no evidence that defendant's act of possession of the firearm was anything other than singular and continuous throughout the time at issue. Thus, we conclude that defendant's convictions for UUW by a felon are based on the same physical act. Accordingly, one of defendant's convictions for UUW by a felon must be vacated.

- 6 -

¶ 30　　　In addition, the State concedes that the mittimus in case number 08 CR 4592 erroneously reflects that defendant was convicted of AUUW, rather than UUW by a felon. Therefore, we not only vacate defendant's conviction for UUW by a felon in case number 08 CR 4592, but we also correct the mittimus in that case to remove the erroneous conviction for AUUW pursuant to Illinois Supreme Court Rule 615. See, *e.g.*, *People v. Hill*, 408 Ill. App. 3d 23, 31 (2011).

¶ 31　　　　　　　　　　　　　II. The Sentence Enhancement for Armed
　　　　　　　　　　　　　　Robbery While Carrying a Firearm

¶ 32　　　In his opening brief, defendant argued that the 15-year statutory enhancement of his armed robbery sentences under section 18-2(b) (720 ILCS 5/18-2(b) (West 2008)) was unconstitutional. Defendant acknowledged that he did not raise the issue in the trial court but argued that a constitutional challenge to a statute may be raised at any time and is subject to *de novo* review. *People v. Robinson*, 2011 IL App (1st) 100078, ¶ 12. A statute bears a strong presumption that it is constitutional; defendant bears the burden of overcoming that presumption and clearly showing that the statute is unconstitutional. *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005).

¶ 33　　　As defendant correctly noted, the 15-year firearm sentencing enhancement for armed robbery was declared unconstitutional in *People v. Hauschild*, 226 Ill. 2d 63, 87 (2007) (a 15-year sentence enhancement for armed robbery while armed with a firearm, imposed under the same armed robbery statute as in the instant case, violated the proportionate-penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), because the penalty for that offense was "more severe than the penalty for the identical offense of armed violence predicated on robbery with a category I or category II weapon"). The State countered that the legislature subsequently passed a statutory amendment (Pub. Act 95-688, § 4 (eff. Oct. 23, 2007)), reviving the sentencing enhancement. The parties recognized a split in the districts as to whether the sentencing enhancement had been revived (First and Fifth Districts ruled that Public Act 95-688 revived the 15-year enhancement in the armed robbery statute in *People v. Malone*, 2012 IL App (1st) 110517, ¶ 90, *People v. Brown*, 2012 IL App (5th) 100452, ¶¶ 15-16, and *People v. Williams*, 2012 IL App (1st) 100126, ¶ 55 (*dicta*), and the Third and Fourth Districts held that the statutory amendment did not revive the sentencing enhancement, which was found to be unconstitutional and void *ab initio* under *Hauschild* in *People v. Blair*, 2012 IL App (3d) 100743-U, ¶ 5, *appeal allowed*, No. 114122 (Ill. May 30, 2012), and *People v. Gillespie*, 2012 IL App (4th) 110151, ¶ 54).

¶ 34　　　Following this court's determination in this case that the 15-year sentencing enhancement was not revived by Public Act 95-688, and therefore remained unconstitutional pursuant to *Hauschild*, the State filed a petition for rehearing. While the petition for rehearing was pending, our supreme court resolved the issue of whether Public Act 95-688 revived the 15-year sentencing enhancement in *People v. Blair*, 2013 IL 114122, ¶¶ 27-38. The *Blair* court held that because the proportionate penalties problem was eliminated by the enactment of Public Act 95-688, the offense of armed robbery while armed with a firearm was revived and therefore the use of the statutory enhanced sentencing range for that offense was not

unconstitutional. In accordance with *Blair*, we hold that Public Act 95-688 effectively revived section 18-4(a)(4) of the Code and therefore the 15-year sentence enhancement imposed in this case is constitutional. *Id.* ¶¶ 27-38; 720 ILCS 5/18-4(a)(4) (West 2008).

¶ 35                                    III. UUW by a Felon

¶ 36    For the first time in a supplemental brief filed subsequent to the State's petition for rehearing, defendant argues that under *People v. Aguilar*, 2013 IL 112116, this court must vacate his remaining conviction for UUW by a felon because the underlying predicate felony of AUUW (case No. 02 CR 30903) under section 24-1.6(a)(1) and (a)(3)(A) is void and unconstitutional. Defendant's argument amounts to a challenge to the sufficiency of the evidence supporting his UUW by a felon conviction.

¶ 37    Both counts under which defendant was convicted for UUW by a felon charged that defendant knowingly possessed a firearm after having previously been convicted of the Class 4 form of AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2002)) in case number 02 CR 30903. As previously stated, at trial, the parties stipulated to defendant's prior AUUW conviction. While we previously vacated one of his convictions for UUW by a felon under the one-act, one-crime rule, defendant remains convicted of one count of UUW by a felon.

¶ 38    In *Aguilar*, 2013 IL 112116, ¶ 22, our supreme court found the Class 4 version of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)) to be unconstitutional in violation of the second amendment right to bear arms. When a statute is declared unconstitutional, it is void *ab initio*, or as though the law had never been passed. See *People v. Tellez-Valencia*, 188 Ill. 2d 523, 526 (1999). Defendant maintains that because his prior conviction for AUUW under case No. 02 CR 30903 is void under *Aguilar*, the State could not rely on this now-void conviction to serve as a predicate offense for UUW by a felon. Therefore, it failed to prove an essential element of the offense. In support of his argument, defendant has cited the recent case of *People v. Dunmore*, 2013 IL App (1st) 121170.

¶ 39    In *Dunmore*, the defendant pled guilty and was convicted of one count of AUUW and was sentenced to 18 months' probation. After a subsequent finding that the defendant violated the terms of his probation, the probation was revoked and the defendant was sentenced to two years' imprisonment. The defendant appealed the revocation of probation and while his appeal was pending, the Illinois Supreme Court decided *Aguilar*, 2013 IL 112116. *Dunmore*, 2013 IL App (1st) 121170, ¶ 1. The defendant maintained that based on *Aguilar*, his conviction and subsequent probation revocation should be vacated. The State agreed, but requested that the case be remanded so that it could reinstate the charges that had been nol-prossed as part of the defendant's guilty plea. The defendant then asked this court to leave the void conviction for AUUW and sentence of probation in place, and limit our consideration solely to the subsequent revocation of probation. *Dunmore*, 2013 IL App (1st) 121170, ¶ 7.

¶ 40    In accordance with *Aguilar*, the *Dunmore* court vacated the defendant's conviction for AUUW because it was void, noting that it had a duty to vacate the void conviction and not just the subsequent revocation of probation. *Id*. ¶ 9. The court also declined the State's request to remand the cause to the trial court subsequent to vacating the AUUW to allow the State to reinstate nol-prossed charges. The court noted that it would not render an advisory opinion on

whether any reinstated charges would pass constitutional muster. *Dunmore*, 2013 IL App (1st) 121170, ¶ 12.

¶ 41     Although the procedural posture of *Dunmore* differs from this case, we nevertheless find *Dunmore* to be instructive. Unlike the defendant's AUUW conviction in *Dunmore*, defendant's conviction for AUUW in No. 02 CR 30903 is not at issue here, nor do we make any findings as to whether *Aguilar* would be applicable to that conviction on a collateral attack. However, because defendant's case is pending on direct appeal in this court, similar to the court in *Dunmore* we cannot ignore *Aguilar*'s effects on his conviction for UUW by a felon. *Dunmore*, 2013 IL App (1st) 121170, ¶ 10; see also *People v. Gersch*, 135 Ill. 2d 384, 397 (1990) (judicial decisions that declare a statute unconstitutional apply to cases pending on direct review).

¶ 42     The specific offense of UUW by a felon with which defendant was charged in this case, makes it "unlawful for a person to knowingly possess on or about his person *** any firearm *** if the person has been convicted of a felony under the laws of this State or any other jurisdiction" (720 ILCS 5/24-1.1(a) (West 2008)). Count VI of the indictment alleged that defendant committed the offense of UUW by a felon when defendant knowingly possessed a firearm after having previously been convicted of AUUW (720 ILCS 5/24-1.6(a)(1) (West 2002)) in case number 02 CR 30903, the same Class 4 form of AUUW that defendant Aguilar was convicted of and which our supreme court found to be facially unconstitutional. *Aguilar*, 2013 IL 112116, ¶ 22. The parties stipulated to this prior conviction during trial. Although the record shows that defendant has a felony conviction for a drug offense in case No. 04 CR 2816001, in which he pled guilty and received six years' imprisonment, no other felony convictions other than the 2002 AUUW were offered to establish the "has been convicted of a felony" element of the offense of UUW by a felon either in the indictment or at trial. Illinois law has long held that, in prosecutions for the offense of UUW by a felon, the prior felony conviction is an element of the offense which must be proven beyond a reasonable doubt by the State in its case in chief. See *People v. Walker*, 211 Ill. 2d 317 (2004) (recognizing that the prior felony conviction is an element of the offense of our UUW by felon statute and adopting the reasoning of *Old Chief v. United States*, 519 U.S. 172 (1997)).

¶ 43     Similar to *Dunmore*, we cannot allow defendant's Class 4 AUUW conviction, which we now know is based on a statute that was found to be unconstitutional and void *ab initio* in *Aguilar*, to stand as a predicate offense for defendant's UUW by a felon conviction. The State alleged and was required to prove the predicate felony Class 4 AUUW beyond a reasonable doubt as an element of the offense of UUW by a felon. Because this issue was raised while defendant's appeal was pending, we are bound to apply *Aguilar* and vacate defendant's remaining UUW by a felon conviction because the State did not prove an essential element of the offense where it alleged in the charging instrument and proved at trial a predicate offense that has been declared unconstitutional and void *ab initio*. A void conviction for the Class 4 form of AUUW found to be unconstitutional in *Aguilar* cannot now, nor can it ever, serve as a predicate offense for any charge.

¶ 44     We want to make it clear that we are not vacating defendant's AUUW conviction in No. 02 CR 30903 pursuant to *Aguilar*. We decline to address whether formal proceedings for

- 9 -

collateral relief may be available to defendant to vacate his conviction in that case. We also decline to issue an advisory opinion as to *Aguilar*'s retroactivity to cases on collateral review and as to whether the State could reinstate the charges it had dismissed in No. 02 CR 30903 in the event defendant is successful in vacating that conviction. See *Dunmore*, 2013 IL App (1st) 121170, ¶ 12.

¶ 45                                    IV. Excessive Sentence

¶ 46       Defendant next argues that his 2 concurrent 29-year sentences for armed robbery, which include the 15-sentence enhancement, are excessive. In addition, in his supplemental brief filed following the State's petition for rehearing, defendant argues that this court should take into consideration that without his prior AUUW conviction, which is now void under *Aguilar*, he only has one prior felony conviction in his background.

¶ 47       A trial court has broad discretionary powers in choosing the appropriate sentence a defendant should receive. *People v. Jones*, 168 Ill. 2d 367, 373 (1995). A reasoned judgment regarding the proper sentence to be imposed must be based upon the particular circumstances of each individual case and depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). "In determining an appropriate sentence, the defendant's history, character, rehabilitative potential, the seriousness of the offense, the need to protect society and the need for deterrence and punishment must be equally weighed." *People v. Jones*, 295 Ill. App. 3d 444, 455 (1998). There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and the court is presumed to have considered any evidence in mitigation that is before it. *People v. Partin*, 156 Ill. App. 3d 365, 373 (1987). The imposition of a sentence is a matter within the trial court's discretion, and a reviewing court has the power to disturb the sentence only if the trial court abused its discretion. *Jones*, 168 Ill. 2d at 373-74.

¶ 48       We find no abuse of discretion in this case where the trial court sentenced defendant to concurrent terms of 29 years' imprisonment for armed robbery. At sentencing, the court heard in aggravation that defendant terrorized his victims. Defendant was an enforcer for the Conservative Vice Lords gang and was responsible for securing gang territory. Defendant's criminal history included a juvenile disposition for aggravated battery. Defendant had also been convicted of aggravated battery, battery, resisting arrest, aggravated assault, criminal trespass to a vehicle, assault, driving under the influence and delivery of a controlled substance within 1,000 feet of a school/park. In mitigation, the court was informed of defendant's troubled childhood and his struggles with alcohol and drug additions. Defendant was abused by his father and grandfather. He was hospitalized as a child due to emotional and behavioral issues. Defendant received a GED and at one time was enrolled in a culinary management program. In imposing sentence, the court indicated that it had considered the evidence that was presented at trial, the presentence investigation report, defendant's background and history, the evidence offered in aggravation and mitigation (see 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2008)), the arguments, the sentencing alternatives suggested by the parties, and the statements of

defendant and his mother. The court also noted that defendant apologized and took responsibility for his actions.

¶ 49 The supreme court has clearly stated that a factor inherent in an offense should not also be used as an aggravating factor at sentencing. *People v. Conover*, 84 Ill. 2d 400, 404 (1981). Therefore, contrary to defendant's argument, the trial court could not have considered his 2002 conviction for AUUW as a factor in aggravation, where it was used to establish an element of the offense of UUW by a felon.

¶ 50 A proper penalty must be based upon the particular circumstances of each case, including the nature and extent of each element of the offense committed by the defendant. *People v. Saldivar*, 113 Ill. 2d 256, 268-69 (1986). Notwithstanding that we vacated defendant's two UUW by a felon convictions, the nature and circumstances giving rise to defendant's prosecution and armed robbery with a gun convictions we find that, based on the record, the trial court clearly considered *all* of the necessary factors in crafting a sentence specific to the offense of armed robbery.

> "When a defendant receives multiple convictions, a new sentencing hearing is not warranted when a conviction is vacated where there is nothing in the record to indicate that the vacated conviction had any effect on the other sentences. *** A reviewing court cannot conclude, solely from a trial court's imposition of separate sentences for multiple convictions, that the sentence imposed for one offense has been influenced by the conviction or sentence for another offense." *People v. Shelton*, 252 Ill. App. 3d 193, 209 (1993) (citing *People v. Payne*, 98 Ill. 2d 45, 55 (1983)).

¶ 51 Furthermore, armed robbery is a Class X offense punishable by not less than 6 years and not more than 30 years' imprisonment. 730 ILCS 5/5-8-1 (West 2008). The court imposed a 14-year sentence on all the armed robbery counts, to which the 15-year enhancement was added, because the court found that defendant used a firearm during the commission of the offenses. 720 ILCS 5/18-2(b) (West 2008). A sentence which falls within the statutory range is presumptively proper and does not constitute an abuse of discretion unless it is manifestly disproportionate to the nature of the offense. *Hauschild*, 226 Ill. 2d at 90. The sentences in this case are not manifestly disproportionate to the nature of the offenses and are presumed proper as they fall within the statutory range. Consequently we cannot say the trial court abused its discretion in imposing the 29-year sentences.

¶ 52 CONCLUSION

¶ 53 For the foregoing reasons, we affirm defendant's convictions and sentences for armed robbery, vacate both convictions for UUW by a felon, and correct the mittimus to remove the erroneous conviction for AUUW.

¶ 54 Affirmed in part and vacated in part; mittimus corrected.