2022 IL App (4th) 210283

NO. 4-21-0283

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 8, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| CASEY T. WILEY, | ) | No. 20CF541 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jason M. Bohm, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justice Harris concurred in the judgment and opinion.
Justice Steigmann specially concurred, with opinion.

**OPINION**

¶ 1        In April 2020, the State charged defendant, Casey T. Wiley, with two counts of possession of weapons by a felon (720 ILCS 5/24-1.1(a) (West 2020)). Prior to trial, defendant's counsel filed a motion *in limine* seeking to exclude all evidence of defendant's prior criminal history. In that motion, defense counsel acknowledged defendant's status as a felon was an element of the offense the State must prove, but counsel wrote defendant would stipulate he had a requisite felony conviction.

¶ 2        When the case was called for jury trial in March 2021, defense counsel informed the trial court defendant did not agree with counsel's motion *in limine* regarding the proposed stipulation. Counsel informed the court defendant "would like the jury to be made aware of the

charge in his previous conviction, as he understands that is an element that the State must prove."

Counsel then moved to withdraw the motion *in limine*, and the trial court granted that request.

¶ 3         After evidence was presented at trial and the parties rested, defense counsel did not request a jury instruction limiting the jurors' consideration of defendant's prior conviction. The jury found defendant guilty of both counts, and the trial court later sentenced him to concurrent terms of 14 years in prison on each count.

¶ 4         Defendant appeals, arguing he was denied his constitutional right to the effective assistance of counsel because his counsel (1) deferred to defendant "on trial-strategy matters" by withdrawing the motion to stipulate to his felon status when the underlying prior conviction was an aggravated weapons offense and (2) failed to request a jury instruction limiting the jurors' consideration of the prior conviction. Defendant further argues this court should vacate one of defendant's two convictions under the one-act, one-crime doctrine because both convictions were based on the same physical act of possessing firearm ammunition. Because we agree only with defendant's second contention, we affirm his conviction and sentence regarding count I but vacate his conviction regarding count II.

¶ 5                         I. BACKGROUND

¶ 6                     A. Charges Against Defendant

¶ 7         In April 2020, the State charged defendant with two counts of possession of weapons by a felon (720 ILCS 5/24-1.1(a) (West 2020)). Count I alleged that, on April 27, 2020, he knowingly possessed on or about his person "40 Armscor brand and 50 Federal brand 9mm firearm ammunition" after having been convicted of a felony under Illinois law—namely, aggravated unlawful use of a weapon in Macon County case No. 2018-CF-942. Count II alleged defendant committed the same offense, only this time the State alleged (1) the offense occurred on

April 28, 2020, and (2) defendant knowingly possessed on or about his person "40 Armscor brand firearm 9mm ammunition."

¶ 8                           B. Defendant's Motion *in Limine*

¶ 9          In March 2021, defense counsel filed a motion *in limine* seeking to "bar the prosecution from admitting evidence or eliciting testimony about the defendant's criminal history." In support thereof, defense counsel alleged, in part, the following:

> "1. That the Defendant is charged in two counts with Unlawful Possession of Ammunition by a Felon, which the prosecution alleges occurred on April 27th and 28th of 2020.
>
> 2. That the defendant has previous[ly] been convicted of a felony offense, and has other criminal matters pending currently.
>
> 3. That the prosecution should be barred from admitting evidence or eliciting testimony about the nature of defendant's criminal history because it is not relevant to the charges at hand. Any mention of the nature of the charges or the facts of any previous offenses would serve merely to prejudice the jury as mere propensity evidence.
>
> 4. That the defendant acknowledges that his status as a felon is an element of the offense the state must prove. Accordingly, the defendant would stipulate that he has a requisite felony conviction for the state to prove the element of the charge. However, the defendant asserts that any mention of the nature of the past offenses, or facts related thereto, would be substantially more prejudicial than probative, and should be barred."

¶ 10          C. Defense Counsel's Withdrawal of the Motion *in Limine*

¶ 11    Defense counsel initially filed two pretrial motions *in limine*. Just before defendant's March 2021 jury trial, defense counsel made a motion to withdraw the first motion *in limine*, described above, explaining as follows:

> "MR. BROWN [(DEFENSE COUNSEL)]: *** Defendant's Motion in Limine One I've discussed it with my client. It would be substantially based [on] *People versus Walker* which permits in the case of an Unlawful Possession of a Weapon by a Felon case, the defense to stipulate that there is a requisite felony conviction without the nature or the charges of that conviction being read to the jury.
>
> I believe it was in [defendant]'s best interest to file this motion and I did. However, in speaking with him, since I have filed it, he has indicated that he would not like this motion on file. Um—that he would like the jury to be made aware of the charge in his previous conviction, as he understands that is an element that the State must prove. And so, at his request, I am withdrawing Defendant's Motion in Limine One.
>
> THE COURT: Okay. At defendant's request the Motion in Limine Number One will be withdrawn."

¶ 12                    D. Evidence at Defendant's Trial

¶ 13    The evidence at defendant's jury trial was simple and straightforward. The State called one civilian witness and some law enforcement officers and also presented a certified copy of defendant's prior conviction, which showed that "in Macon County case No. 2018-CF-942, defendant on January 24, 2020, was convicted of the offense of aggravated unlawful use of weapon, a felony, according to the laws of the State of Illinois." The parties also stipulated that

defendant's Firearm Owner's Identification (FOID) card was revoked on April 27 and April 28, 2020, due to a prior felony conviction.

¶ 14        Darbi Hughes testified she was working at Decatur Jewelry and Pawn on April 27, 2020. Part of her duties consisted of selling ammunition. Around 4 p.m. that afternoon, she waited on a man outside because the store was not letting customers inside due to COVID. Hughes identified defendant in open court as the man about whom she was testifying. Defendant said he wanted to purchase ammunition. Hughes asked for his FOID card and what kind of ammunition he wanted.

¶ 15        After defendant told Hughes what he wanted, she went into the store to get the ammunition. She rang up the sale and collected money from defendant for the ammunition. Hughes gave defendant back his FOID card, the ammunition, and change from the sale.

¶ 16        After defendant left the store, Hughes and other employees determined "there was a big possibility that his FOID card had been revoked." Although defendant had already left the store, they called the police.

¶ 17        Hughes identified a sales receipt from the store regarding the ammunition defendant purchased, and it was admitted into evidence. The receipt showed the salesperson was Hughes and the purchaser was listed as "Casey T. Wiley." The receipt showed he purchased 50 rounds of Federal brand 9-millimeter ammunition and 40 rounds of Armscor brand 9-millimeter ammunition.

¶ 18        Hughes also scanned the FOID card defendant gave her, which was a practice the staff always did when anyone came to the store to purchase any kind of firearm or ammunition. She identified People's exhibit number 2 as being the scanned copy of the FOID card defendant gave her. That exhibit bore the name and picture of Casey T. Wiley as the cardholder and was also

admitted into evidence.

¶ 19        On cross-examination, Hughes acknowledged it was unlawful to sell ammunition to someone without a valid FOID card and that even though she had concerns about defendant, she nonetheless completed the sale. Hughes later stated on cross-examination she conducted only the initial outside-the-building process and did not ring up the sale.

¶ 20        Hughes also acknowledged the scanned copy of defendant's FOID card had been taken when he was previously in the store, and the scanned copy apparently was kept on file. Hughes also testified she did not create defendant's receipt or use the computer to produce the receipt.

¶ 21        Corey Wiley, defendant's twin brother, testified he assisted defendant in obtaining apartment 4 at 3255 Beth Boulevard in Decatur, Illinois, in the early part of 2020. Defendant lived in that apartment in late April 2020, and Corey did not. Corey testified defendant lived there alone.

¶ 22        Damian Lile testified he was employed by the Illinois Department of Corrections as a parole officer in April 2020 and was assigned as the parole officer for defendant. In that role, Lile conducted home visits at defendant's apartment on Beth Boulevard in the spring of 2020. To Lile's knowledge, defendant was the only one who lived in that apartment.

¶ 23        Decatur police detective Chad Ramey testified he was assigned to investigate the purchase of firearm ammunition by defendant on April 27, 2020. Ramey knew defendant was on parole and did not possess a valid FOID card because of his status as a felon.

¶ 24        Ramey contacted Lile to determine defendant's current residence, which was the Beth Boulevard apartment. Ramey engaged in surveillance of that apartment building and observed defendant leave the building. The police then arrested defendant for the ammunition purchase he made the day before. After defendant's arrest, Ramey made contact with another

parole officer, who went with Ramey back to defendant's apartment where Ramey and other detectives conducted a parole search.

¶ 25    During the search, Ramey found "a letter that was addressed to [defendant] from a business." He also found an old, expired FOID card that was in defendant's name.

¶ 26    Other detectives searching the apartment found 40 rounds of Armscor 9-millimeter ammunition; 20 rounds were found hidden in a sunglass bag in the bathroom light and an additional 20 rounds were found in a filing cabinet in the bedroom. The detectives also found a passport renewal application in the name of Casey Wiley located inside the same filing cabinet. The application contained a photograph of defendant stapled to it. When defendant was arrested, the police determined he possessed keys that unlocked apartment four.

¶ 27    After the State rested, defendant did not testify or present other evidence. The trial court did not give a limiting instruction concerning the jurors' use of defendant's prior conviction.

¶ 28    The jury found defendant guilty on both counts, and the trial court later sentenced him to concurrent terms of 14 years in prison on each count.

¶ 29    This appeal followed.

¶ 30                                   II. ANALYSIS

¶ 31    Defendant appeals, arguing he was denied his constitutional right to the effective assistance of counsel because his counsel (1) deferred to defendant "on trial-strategy matters" by withdrawing the motion to stipulate to his felon status when the underlying prior conviction was an aggravated weapons offense and (2) failed to request a jury instruction limiting the jurors' consideration of the prior conviction. Defendant further argues this court should vacate one of defendant's two convictions under the one-act, one-crime doctrine because both convictions were based on the same physical act of possessing firearm ammunition. Because we agree only with

defendant's second contention, we affirm his conviction and sentence regarding count I but vacate his conviction regarding count II.

¶ 32                              A. Ineffective Assistance of Counsel

¶ 33                                    1. *Applicable Law*

¶ 34        "To demonstrate ineffective assistance of counsel, a defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90, 162 N.E.3d 223 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Further, in *People v. Veach*, 2017 IL 120649, ¶ 30, 89 N.E.3d 366, the supreme court explained that a defendant arguing he received ineffective assistance of counsel "must show that counsel's performance was objectively unreasonable under prevailing professional norms." (Internal quotation marks omitted.) The *Veach* court also added a "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *Veach*, 2017 IL 120649, ¶ 30. "Because the defendant must satisfy both prongs of this test, the failure to establish either is fatal to the claim." *Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland*, 466 U.S. at 697).

¶ 35        "When a claim of ineffective assistance of counsel was not raised at the trial court, [the appellate] court's review is *de novo*." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 85, 126 N.E.3d 703.

¶ 36                                    2. *Performance Prong*

¶ 37        Defendant notes his trial counsel filed a motion *in limine* seeking to exclude any evidence or arguments about the nature of defendant's prior conviction and instead offered to

stipulate defendant was a felon. However, prior to trial, defense counsel withdrew that motion, even though he still believed the offer to stipulate was in defendant's best interest. Defendant then contends as follows: "Rather than proceed with his strategy of stipulating, defense counsel indicated that he was deferring to [defendant], who had no formal legal training or legal sophistication, as justification in withdrawing the motion." Defendant further asserts "quite simply, it was objectively unreasonable for defense counsel to defer to [defendant], an untrained layman, in the manner in which defense counsel conducted [defendant's] defense at trial."

¶ 38        However, we need not definitively resolve whether counsel's performance in this case was deficient because, as we explain in the next section of this opinion, defendant fails to meet his burden to show the second prong required to demonstrate ineffective assistance of counsel—namely, that his attorney's deficient performance prejudiced him such that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *Jackson*, 2020 IL 124112, ¶ 90.

¶ 39                          3. *Prejudice Prong*

¶ 40        In *People v. Moore*, 2020 IL 124538, ¶ 42, 161 N.E.3d 125, the supreme court addressed the prejudice component, the second prong of an analysis of an ineffective assistance of counsel claim, and wrote that the United State Supreme Court's decision in *Strickland* "requires the defendant show there was a reasonable probability that the result of the proceedings in this case would have been different if the jury had not learned" of the objectionable material. Regarding prejudice, the supreme court reaffirmed what it wrote in *People v. Hughes*, 2012 IL 112817, 983 N.E.2d 439, that " 'the question whether a given defendant has made the requisite [*Strickland*] prejudice showing will turn on the facts of a particular case.' " *Moore*, 2020 IL 124538, ¶ 46 (quoting *Hughes*, 2012 IL 112817, ¶ 65). Ultimately, the supreme court wrote that it had

thoroughly examined the trial record and concluded as follows: "We agree with defendant that the evidence was closely balanced and that there was a reasonable probability that the prior murder conviction evidence tipped the scales against defendant." *Moore*, 2020 IL 124538, ¶ 48.

¶ 41                                    4. *This Case*

¶ 42        Based upon our examination of the record in this case, we conclude defendant's claim of prejudice based upon his trial counsel's alleged ineffectiveness falls far short of demonstrating the prejudice defendant is required to show to sustain his claim. In short, the evidence of defendant's guilt in this case is not closely balanced; it is overwhelming.

¶ 43        Defendant attacks the testimony of Hughes as (1) lacking credibility or corroboration and (2) containing some inconsistencies. Defendant also claims the evidence was not clear defendant lived alone in the apartment where the ammunition was found or that only he had access to the apartment. However, given the totality of the evidence presented against defendant, none of these arguments are remotely persuasive in support of defendant's claim of ineffective assistance.  Thus, defendant has failed to demonstrate prejudice.

¶ 44        For the same reasons, we reject defendant's additional claim his trial counsel was ineffective for failing to offer a jury instruction limiting the jury's consideration of defendant's prior felony conviction to proof of his felon-status. Even if we were to assume defense counsel performed deficiently by failing to request such an instruction, defendant cannot show he was prejudiced by his counsel's error. As described above, the evidence of defendant's guilt was overwhelming.

¶ 45                          B. One-Act, One-Crime Doctrine

¶ 46        Defendant next argues that this court should vacate one of his two convictions for the offense of possession of a weapon by a felon under the one-act, one-crime doctrine because

both convictions were based on the same physical act of possessing firearm ammunition. We agree.

¶ 47    Multiple convictions are improper if they are based on precisely the same physical act. *People v. Reveles-Cordova*, 2020 IL 124797, ¶ 12, 181 N.E.3d 806. If an offense rests on a defendant's possession of contraband, multiple convictions based on the same unlawful possession is generally improper. See *People v. Johnson*, 237 Ill. 2d 81, 97-98, 927 N.E.2d 1179, 1189-90 (2010); but see *People v. Dinelli*, 217 Ill. 2d 387, 404-06, 841 N.E.2d 968, 979-80 (2005) (allowing for the imposition of two convictions for possession of the same stolen vehicle when defendant was not in continuous possession of the vehicle).

¶ 48    Defendant contends he was improperly convicted twice for the continuous possession of the same Armscor ammunition he purchased on April 27, 2020, which was then found at his apartment the following day, April 28, 2020. Both count I and count II referred to 40 rounds of Armscor ammunition. The only difference between the two counts was that count I also referred to 50 rounds of Federal brand 9-millimeter ammunition, and it appears the State charged defendant in count I and count II with the unlawful possession of the same Armscor ammunition.

¶ 49    In support of this rather common-sense inference, we note the State, in closing argument, made the same observation. The State conceded it was not known for sure  the 40 rounds of Armscor 9-millimeter ammunition found on April 28 were the exact same 40 rounds defendant purchased the previous day, but "you're allowed to make inferences, based on the evidence presented to you."

¶ 50    The appellate court has addressed whether the continuous possession of the same contraband may support separate convictions under the one-act, one-crime doctrine. In *People v. McFadden*, 2014 IL App (1st) 102939, ¶¶ 6, 26-27, 29, 8 N.E.3d 429, *rev'd in part on other grounds*, 2016 IL 117424, 61 N.E.3d 74, the defendant was twice convicted of possession of a

weapon by a felon, but those convictions were based upon possession of the same firearm the defendant used to commit three separate armed robberies during one 24-hour period. The appellate court ultimately affirmed the defendant's convictions for the three separate armed robberies but vacated one of the possession convictions, concluding that it violated the one-act, one-crime doctrine. *McFadden*, 2014 IL App (1st) 102939, ¶ 29. In so concluding, the First District wrote the following:

> "Possessory offenses have always posed special problems in determining violations of the one-act, one-crime rule. ***
>
> In this case, *** allowing seemingly continuous possession as the basis of more than one conviction theoretically would permit a potentially infinite number of convictions, as the defendant possessed the firearm from hour to hour, minute to minute, nanosecond to nanosecond. We presume the legislature did not intend that result. While the evidence here shows discrete armed robberies, there is no evidence that defendant's act of possession of the firearm was anything other than singular and continuous throughout the time at issue. Thus, we conclude that defendant's convictions for UUW by a felon are based on the same physical act. Accordingly, one of defendant's convictions for UUW by a felon must be vacated." *McFadden*, 2014 IL App (1st) 102939, ¶¶ 28-29.

¶ 51 Substituting ammunition for firearm, the analysis in *McFadden* applies fully to the circumstances of the present case, leading to our conclusion defendant's two convictions for possession of ammunition by a felon cannot be permitted to stand.

¶ 52 We acknowledge defendant did not raise this issue at trial, and thus, it must be reviewed as plain error. However, in *People v. Smith*, 2019 IL 123901, ¶ 14, 155 N.E.3d 396, the

Illinois Supreme Court addressed the application of the plain-error doctrine to an alleged one-act, one-crime violation and wrote the following:

> "An alleged one-act, one-crime violation is reviewable under the second prong of the plain-error doctrine because it affects the integrity of the judicial process. [Citation.] Although the one-act, one-crime rule is not of constitutional dimension, its purpose is to prevent the prejudicial effect that could result in those instances where more than one offense is carved from the same physical act."

¶ 53    Accordingly, we vacate defendant's conviction and sentence for count II of the charges against him.

¶ 54                                   III. CONCLUSION

¶ 55    For the reasons stated, we affirm the trial court's judgment and sentence regarding count I, and we vacate defendant's conviction and sentence regarding count II.

¶ 56    Affirmed in part and vacated in part.

¶ 57    JUSTICE STEIGMANN, specially concurring:

¶ 58    Although I fully agree with my distinguished colleagues in the majority, I write this special concurrence because this case reveals the uncertain state of Illinois law regarding stipulations in criminal cases.

¶ 59    I. DEFENDANT'S CLAIM THAT HIS ATTORNEY'S PERFORMANCE FELL
BELOW AN OBJECTIVE STANDARD OF REASONABLENESS

¶ 60    In support of this argument, defendant cites *People v. Moore*, 2020 IL 124538, ¶ 41, in which the supreme court reversed and remanded for a new trial when defense counsel failed to stipulate to the defendant's felony status in a felon-in-possession of a weapon case. See also *People v. Brown*, 2021 IL App (4th) 190286-U, ¶ 17 (in which this court wrote that it could "find no

- 13 -

legitimate purpose for counsel's failure to at least stipulate to defendant's status as a felon *** even considering the highly deferential standard by which we are to review matters of trial strategy").

¶ 61    Of course, in the present case, defendant's trial counsel *did* file a motion *in limine* seeking a stipulation, just as the *Moore* and *Brown* courts stated that counsel should in cases of this kind. However, the present case differs because, here, counsel withdrew his motion at defendant's request.

¶ 62    So, the primary question this case presents is the following: Who gets to decide whether the defense will stipulate to the defendant's status as a felon—the defendant himself or his trial counsel?

¶ 63    If the answer to that question is defendant himself, then that answer dispositively refutes defendant's claim on appeal that he received ineffective assistance of trial counsel.

¶ 64    A. An Analysis of Illinois Law on Stipulations in Criminal Cases

¶ 65    In *People v. Campbell*, 332 Ill. App. 3d 808, 811-12, 773 N.E.2d 218, 221 (2002), the defendant, who had been convicted of criminal trespass to a residence, argued on appeal that he had been denied his constitutional right to confront the witnesses against him because defense counsel, without the defendant's knowing consent, stipulated to the testimony of a key State's witness. This court held that, with two exceptions, defense counsel can stipulate to prosecution testimony without a defendant's knowing consent because the decision to stipulate is a matter of trial strategy. *Id.* at 814. The two exceptions are (1) when the State's entire case is to be presented by stipulation and (2) when the stipulation includes a statement that the evidence is sufficient to convict the defendant. *Id.*

¶ 66    The Illinois Supreme Court affirmed this court's judgment in that case, but—

regrettably—not on the same basis. Instead, the supreme court wrote the following:

> "We agree that defense counsel may waive a defendant's right of confrontation *as long as the defendant does not object and the decision to stipulate is a matter of trial tactics and strategy*. *** We therefore affirm the appellate court's finding that defense counsel may stipulate to the admission of evidence and thereby waive his client's constitutional right to confrontation." (Emphasis added.) *People v. Campbell*, 208 Ill. 2d 203, 217, 802 N.E.2d 1205, 1213 (2003).

¶ 67    I note that, in *Campbell*, the supreme court addressed whether the decision to stipulate to certain State's evidence is one of those decisions that belongs personally to the criminal defendant. Citing *People v. Ramey*, 152 Ill. 2d 41, 604 N.E.2d 275 (1992), and *People v. Brocksmith*, 162 Ill. 2d 224, 642 N.E.2d 1230 (1994), the supreme court wrote that there are five decisions that ultimately belong to the defendant in a criminal case after consultation with his attorney: (1) what plea to enter, (2) whether to waive a jury trial, (3) whether to testify on his own behalf, (4) whether to tender a lesser-included offense, and (5) whether to appeal. *Campbell*, 208 Ill. 2d at 210 (citing *Ramey*, 152 Ill. 2d at 54, and *Brocksmith*, 162 Ill. 2d at 229). Significantly, the supreme court in *Ramey* even held that the defendant's constitutional right to due process was not violated when his trial counsel presented a defense against the defendant's wishes because the defense theory to be presented at trial is not one of the matters that the defendant has the ultimate right to decide. *Ramey*, 152 Ill. 2d at 54. Ultimately, the supreme court in *Campbell* indicated that the decision to stipulate to certain State's evidence was not one of those decisions belonging personally to the defendant. *Campbell*, 208 Ill. 2d at 212-13.

¶ 68         1. *Cases Interpreting the "As Long As" Clause of* Campbell

¶ 69    The appellate court has had difficulty applying the "as long as" clause of *Campbell*.

For instance, in *People v. Phillips*, 326 Ill. App. 3d 157, 158-59 (2001) (*Phillips I*), the defendant was charged with several drug offenses, and, at trial, the prosecutor and defense counsel stipulated to the admission in evidence of various laboratory reports. Because the record contained no showing that the defendant objected to that stipulation, the Third District affirmed the defendant's conviction, rejecting her claim that the stipulation violated her right of confrontation. *Id.* at 161.

¶ 70        However, in *People v. Phillips*, 208 Ill. 2d 550 (2004) (*Phillips II*), the Supreme Court of Illinois vacated that decision and remanded the case to the Third District to reconsider its judgment in light of the supreme court's decision in *Campbell*. On remand, the Third District reversed the defendant's conviction based upon its interpretation of *Campbell* "that in order to waive the defendant's sixth amendment right of confrontation by stipulating to the admission of evidence, there must be some affirmative showing or indication by the defendant in the record that he or she did not object to or dissent from the attorney's decision to stipulate." *People v. Phillips*, 352 Ill. App. 3d 867, 871 (2004) (*Phillips III*). The Third District further held that when a defendant is stipulating to the admission of evidence, the record must affirmatively show that he was (1) advised of the right to confrontation, (2) informed of the impact of waiving that right, and (3) either concurred with or objected to that waiver. *Id.* at 872.

¶ 71        The supreme court again reviewed the Third District's decision and this time reversed. *People v. Phillips*, 217 Ill. 2d 270, 288-89 (2005) (*Phillips IV*). In doing so, the supreme court explicitly rejected the Third District's concerns, writing as follows:

> "In sum, it is not necessary for either the court or counsel to admonish a defendant about the implications and consequences of a stipulation, and defendant's explicit agreement to the stipulation on the record is not required where, as here, (1) defense counsel's decision to stipulate appears to have been a matter of trial tactics and

strategy and defendant does not object to counsel's decision, and (2) the State's entire case is not presented by stipulation, the defendant *does* present or preserve a defense, and the stipulation does not include a statement that the evidence is sufficient to convict." (Emphasis in original.) *Id.* at 288.

¶ 72 Since its decision in *Phillips IV*, the supreme court has reaffirmed its earlier decisions in both *Campbell* and *Phillips IV* in the following cases: *People v. Medina*, 221 Ill. 2d 394, 404-08 (2006); *People v. Rowell*, 229 Ill. 2d 82, 102 (2008); and *People v. Clendenin*, 238 Ill. 2d 302, 316-22 (2010).

¶ 73 2. *What Happens If the Defendant Does Object to the Proposed Stipulation?*

¶ 74 In *Campbell*, the supreme court wrote that defense counsel may waive a defendant's right of confrontation as long as the defendant does not object. *Campbell*, 208 Ill. 2d at 217. However, left unspoken is what happens if, as happened in the present case, the defendant does object. In other words, does a defendant's objection overrule trial counsel's decision to stipulate to the evidence at issue? Under *Campbell*, the answer appears to be "yes."

¶ 75 Such an approach makes sense with regard to the five decisions personally belonging to the defendant earlier discussed in this opinion. *Supra* ¶ 67. In such cases, the defendant's wishes trump *any* position of defense counsel to the contrary. For instance, a defendant possesses the personal right to decide whether to take the witness stand, even if his trial counsel believes his decision to be unwise. Similarly, a defendant can insist on having a jury trial (or a bench trial) no matter how strongly trial counsel disagrees.

¶ 76 However, in situations in which the issue is one addressed to trial counsel's judgment, not the defendant's, *Campbell*'s approach makes little sense. For instance, in *Ramey*, a death-penalty murder case, the defendant's trial counsel presented a defense of self-defense against

his client's wishes, yet the supreme court affirmed. The supreme court cited the American Bar Association standards for criminal justice that provide that trial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy, after consulting with his client. *Ramey*, 152 Ill. 2d at 53-54 (citing 1 ABA Standards for Criminal Justice § 4-5.2 (2d ed. Supp. 1986)). *Ramey* does not reveal how much "consulting with his client" defense counsel did in that case but, however much occurred, it was apparently not enough to persuade the defendant that his counsel's strategy was the best approach.

¶ 77        Following the supreme court's decision in *Ramey*, Illinois courts of review have repeatedly reiterated how trial counsel is in total control of the case except for the decisions *Ramey* identified as belonging to the defendant. See, *e.g.*, *People v. Reid*, 179 Ill. 2d 297, 310, 688 N.E.2d 1156, 1162 (1997) ("Decisions concerning which witnesses to call at trial and what evidence to present on [the] defendant's behalf ultimately rest with trial counsel."); *People v. Hamilton*, 361 Ill. App. 3d 836, 847, 838 N.E.2d 160, 170 (2005) (same); *People v. Patterson*, 347 Ill. App. 3d 1044, 1054, 808 N.E.2d 1159, 1167 (2004) ("The decision whether to call particular witnesses and the manner and extent of cross-examination are matters of trial strategy and thus will not ordinarily support an ineffective-assistance-of-counsel claim."); *People v. McKinney*, 260 Ill. App. 3d 539, 546, 631 N.E.2d 1281, 1288-89 (1994) (same); *People v. Campbell*, 264 Ill. App. 3d 712, 732, 636 N.E.2d 575, 589 (1992) (trial counsel is in charge of what questions to ask prospective jurors during *voir dire* examination).

¶ 78        Although, as the *Ramey* court stated, a defendant's trial counsel should no doubt "consult[ ] with his client" with regard to matters of tactics and strategy (*Ramey*, 152 Ill. 2d at 54), in neither *Ramey* nor any of the foregoing cases is there any hint that the defendant, by stating his objection to his counsel's actions, is thereby entitled to trump them. Yet, that is exactly what

- 18 -

*Campbell* seems to hold—that a defendant's objection to his trial counsel's strategic decision to stipulate to some of the State's evidence overrules counsel's decision.

¶ 79    Nothing about stipulation practice elevates it for special treatment. Instead, the decision whether to stipulate should be seen as merely one of several important judgments defense counsel may be called upon to make during trial. Surely, this decision is no more important than the decision about (1) how—and whether—to cross-examine a State's witness, (2) which, if any, defense witnesses to call, or (3) what questions to ask the defendant should he choose to testify. In fact, the decision whether to stipulate seems rather less important than the decision about what defense to assert at defendant's trial. Yet, all of the foregoing decisions belong exclusively to defense counsel, and his decision prevails even over the defendant's objection. See *Ramey*, 152 Ill. 2d at 53.

¶ 80                         3. People v. Lee*, the Only Case on Point*

¶ 81    In *People v. Lee*, 379 Ill. App. 3d 533, 536-38 (2008), the First District Appellate Court addressed a situation very much like the one in the present case. In *Lee*, the defendant was charged with unlawful use of weapon by a felon. Before trial, the State offered to stipulate that the defendant was a felon. However, over defense counsel's objection, the defendant refused to stipulate to his conviction. *Id.* at 535.

¶ 82    On the day of trial, the trial court reiterated to the defendant his right to stipulate to his prior felony conviction, but the defendant still refused. Defense counsel then argued that determining whether to stipulate was a matter of trial strategy and therefore belonged exclusively to counsel. As a result, despite defendant's refusal, defense counsel asked the court to accept the stipulation to the defendant's prior felony conviction. However, the trial court denied the stipulation on the basis that the defendant must agree with the fact of stipulation, and, in the case

at bar, the defendant did not. *Id.* at 535.

¶ 83    The defendant was convicted and argued on appeal that the trial court erred by failing to accept defense counsel's offer to stipulate over the defendant's objection. The First District disagreed, writing as follows:

> "The law clearly states that a defense counsel may not stipulate to evidence if a defendant objects to the stipulation. In *Phillips* [*IV*], our supreme court reaffirmed its prior holding announced in [*Campbell*], which clarified when a defense attorney could enter into a stipulation and when a defendant was required to personally waive his right to confrontation. [Citation.] Specifically, the supreme court stated that, '[w]e agree that defense counsel may waive a defendant's right of confrontation *as long as the defendant does not object* and the decision to stipulate is a matter of trial tactics and strategy.' " (Emphasis added and internal quotation marks omitted.) *Id.* at 538.

¶ 84    Accordingly, the appellate court rejected the defendant's argument and affirmed the trial court, concluding as follows:

> "[I]n the case at bar, there is no dispute that defendant repeatedly objected to the proposed stipulation. Moreover, we need not engage in a balancing test as to whether admission of defendant's record of conviction was more prejudicial than probative because defendant did not agree to stipulate to his prior conviction." *Id.*

¶ 85                                   B. This Case

¶ 86    The record in this case makes clear that defendant's trial counsel believed that defendant's objection to counsel's motion *in limine*—requiring the State to stipulate to defendant's prior felony conviction without naming that conviction—overrode counsel's professional

judgment to take that action. Further, I note that when defense counsel moved to withdraw the motion *in limine* regarding the stipulation because his client disagreed with that action, the prosecutor remained silent, impliedly agreeing that defense counsel was correct that defendant could trump counsel's judgment regarding this stipulation.

¶ 87 I also note that the trial court accepted counsel's explanation without any questions and granted his motion to withdraw his motion *in limine*. That action similarly indicates that the trial court agreed with defendant's counsel that defendant's objection to the stipulation overrode counsel's wish to stipulate.

¶ 88 Nonetheless, defendant now argues on appeal that he did not have the authority to overrule his counsel's determination that a stipulation regarding defendant's felony status was important to protect defendant's right to a fair trial. In so arguing, defendant asserts that the First District's decision in *Lee* was wrongly decided because "it improperly expanded the decisions expressly reserved to defendants previously delineated by the Illinois Supreme Court" in *Ramey* and *Brocksmith*.

¶ 89                                    II. CONCLUSION

¶ 90 I have engaged in this extensive discussion of the law regarding stipulations in criminal cases because (1) I view that law as unclear, particularly when (as here) a defendant objects to a stipulation that his trial counsel wishes to make, (2) there is at least one appellate court decision—namely, *Lee*—that appears directly on point and is contrary to the argument defendant presents in this case, and (3) I think defendant makes a strong argument that he did not have the right to trump his trial counsel's decision regarding the stipulation.

¶ 91 The uncertainty I have described pertaining to stipulations in criminal cases is regrettable, especially given (1) their frequency, (2) their importance, and (3) the Illinois Supreme

- 21 -

Court's express approval of the use of stipulations. See *Phillips IV*, 217 Ill. 2d at 284-85 ("As recently as our decision in *People v. Woods*, 214 Ill. 2d 455, 468, 828 N.E.2d 247 (2005), we reiterated that courts look with favor upon stipulations insofar as they tend to promote disposition of cases, simplification of issues, and the saving of expense to litigants." (Internal quotation marks omitted.)).

¶ 92        My preference would be for the Illinois Supreme Court to decide that the decision to stipulate—like the decision regarding what defense to present—belongs to defense counsel, without caveats. However, until the Illinois Supreme Court further addresses this issue, this court (like every other lower court in Illinois) will need to do our best to apply the law as best we understand it.

*People v. Wiley*, 2022 IL App (4th) 210283

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Macon County, No. 20-CF-541; the Hon. Jason M. Bohm, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Edward J. Wittrig, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Scott Rueter, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and James C. Majors, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |